**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      No. 04-cr-667 WJ

D.M. "MOE" CAMILLI,

    Defendant.

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO SUBMIT JURY QUESTIONNAIRE**

THIS MATTER comes before the Court on Defendant David Camilli's Motion to Submit a Jury Questionnaire, filed March 18, 2011 (Doc. 104). The United States does not oppose the motion. Defendant wishes to submit a supplemental written jury questionnaire to the members of the panel from which the jury in this case will be selected. The Court finds that the motion is not well taken and shall be denied.

Defendant's request is not supported by the case law cited in the motion. In *Skilling v. United States*, the Supreme Court approved the use of a jury questionnaire due to the massive pretrial publicity surrounding the defendant, who was the CEO of Enron Corporation before it crashed into bankruptcy. 130 S. Ct. 2896, 2907, 2917 (2010). Enron was a massive scale collapse, affecting thousands of people and eviscerating the life savings of employees and shareholders, and figured prominently in national and local news. *Id.* at 2908. The instant case – alleged tax fraud in a small business – is not at all akin to the collapse of Enron. The rationales that the Supreme Court used when approving of questionnaires in that case do not mandate the same result in this case. Similarly, in *United States v. Faulkner*, the subject matter of the crime –

the so-called "I-30 scandal" related to fraudulent real estate loans – was "unquestionably the subject of enormous publicity in Dallas." 17 F.3d 745, 756 (5th Cir. 1994). Because of this, the trial judge had gone "to great lengths during jury selection to question the jury panel regarding adverse publicity," including the use of a pre-voir dire questionnaire. *Id.* at 758 & n.14.

The events of this case took place in Las Cruces, and the case is presently on the Court's Albuquerque docket, with the jury panel bring drawn from the northern half of the state.[1] To the extent there was pretrial publicity in the Las Cruces area regarding the Defendant, trying the Defendant in Albuquerque removes the case from the potentially negative pretrial publicity that necessitated the use of questionnaires in *Faulkner* and *Skilling*. Moreover, by utilizing the District of New Mexico's Jury Selection Plan and drawing jurors from the northern part of the state, the Court is confident that few if any potential jurors will have ever heard of David "Moe" Camilli.

In *United States v. Thai*, the nature of the defendants (who were gang members) and their violent crimes necessitated the use of an anonymous jury, in order to protect those serving on the jury. 29 F.3d 785, 800-01 (2nd Cir. 1994). In this context, the jury questionnaire was one of the only tools defense counsel had available to "protect defendants' interests in jury selection." *Id.* at 801. The United States has not moved for an anonymous jury in this case, and so again, the same rationales do not apply.

Furthermore, Defendant's request would be overly burdensome to court staff, who would be responsible for sending out the jury questionnaire to all the members of the panel, who most

---

[1] See the Jury Selection Plan adopted by the United States District Court for the District of New Mexico, available at http://www.nmcourt.fed.us/web/DCDOCS/files/JurySelectionPlanFinal120408.pdf.

likely will be scattered around the northern half of New Mexico. Additionally, the request would be duplicative of the questions the Court intends to ask at voir dire, and any possible "efficiency gains" Defendant claims will result from the use of the questionnaire would be marginal and would not offset these costs to judicial economy.

Finally, the Court notes that while this case has been designated complex, the subject matter of the indictment is not truly "complex." Rather, the case was designated complex because of the myriad of discovery issues, and because of defense counsel's busy schedule due to handling a death penalty case concurrently with this case. Therefore, the complexity of this case does not militate the use of a jury panel questionnaire. Defendant's ability to control for exposure to negative pretrial publicity among the jury panel will be adequately protected in the regular voir dire process that is utilized in the vast majority of cases that are tried in this district court.

**THEREFORE, IT IS ORDERED** that Defendant's Motion to Submit a Jury Questionnaire (Doc. 104) is hereby DENIED.

_____
UNITED STATES DISTRICT JUDGE